SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

————————————————————————X

HONGYING ZHAO, JUAN LIU, SHENSI HE,               :
HONGLEI TIAN, HAIYAN WANG, JINMEI WANG,           :
YIHE SUN, SHAOMIN LU, GE GAO,                     :        Index No. 155530/2017
KUNYUN ZHANG, FENGWEI WANG,                       :
DANDONG WU, XIAOLI WANG, PENG WANG,               :        **AMDENDED**
YIMIN YANG, JINGRUI FENG, LING SHEN,              :
CUIRONG LI, HUI ZHENG, CHANGLI XIAO,              :        **SUMMONS**
QIUYUE ZU, XIUHUA WANG, XIAOYUN ZHANG,            :
JINLI QIN, SHUYAN FENG, KANWEN ZHANG              :
and QIAN LU,                                      :
                                                  :
                              Plaintiffs,         :        Venue is based on Defendants'
                                                  :        Place of Business:
            -against-                             :        47 West 39th Street
                                                  :        New York, New York 10018
BAR WORKS USA LLC,                                :
BAR WORKS INC.,                                   :
BAR WORKS MANAGEMENT INC,                         :
BAR WORKS CHAMBERS ST, INC.,                      :
BAR WORKS TRIBECA INC,                            :
BAR WORKS SAN FRANCISCO 1, LLC,                   :
BAR WORKS CAPITAL, LLC,                           :
BAR WORKS METROPOLITAL AVE, INC.,                 :
BAR WORKS EIGHTH AVENUE INC.,                     :
JONATHAN BLACK,                                   :
FRANKLIN KINARD,                                  :
RENWICK HADDOW, and                               :
ZOIA KYSELOVA a/k/a ZOE MILLER a/k/a              :
ZOIA HADDOW a/k/a KOIA KYSELOVA,                  :
                                                  :
                              Defendants.         :

————————————————————————X

**To the above named Defendants:**

    **You are hereby summoned** to answer the complaint in this action, and to serve a copy of

your answer, or, if the complaint is not served with this summons, to serve a notice of appearance

on the Plaintiffs' attorneys within twenty days after the service of this summons, exclusive of the

day of service, where service is made by delivery upon you personally within the state, or, within

30 days after completion or service where service is made in any other manner.  In case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: June 25, 2017                           Yours, etc.,
      New York, New York                     MICHAEL J. KAPIN, P.C.
                                          *Attorney for Plaintiffs*

                                     _____
                                     MICHAEL J. KAPIN, ESQ.
                                     305 Broadway, Suite 1004
                                     New York, NY 10007
                                     (212) 513-0500

Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 3 of 36

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————X

HONGYING ZHAO, JUAN LIU, SHENSI HE,                  :
HONGLEI TIAN, HAIYAN WANG, JINMEI WANG,              :     Index No. 155530/2017
YIHE SUN, SHAOMIN LU, GE GAO,                        :
KUNYUN ZHANG, FENGWEI WANG,                          :
DANDONG WU, XIAOLI WANG, PENG WANG,                  :
YIMIN YANG, JINGRUI FENG, LING SHEN,                 :     **FIRST AMENDED**
CUIRONG LI, HUI ZHENG, CHANGLI XIAO,                 :     **VERIFIED COMPLAINT**
QIUYUE ZU, XIUHUA WANG, XIAOYUN ZHANG,               :
JINLI QIN, SHUYAN FENG, KANWEN ZHANG                 :
and QIAN LU,                                         :
                                                     :
                          Plaintiffs,                :
                                                     :
            -against-                                :
                                                     :
BAR WORKS USA LLC,                                   :
BAR WORKS INC.,                                      :
BAR WORKS MANAGEMENT INC,                            :
BAR WORKS CHAMBERS ST, INC.,                         :
BAR WORKS TRIBECA INC,                               :
BAR WORKS SAN FRANCISCO 1, LLC,                      :
BAR WORKS CAPITAL, LLC,                              :
BAR WORKS METROPOLITAL AVE, INC.,                    :
BAR WORKS EIGHTH AVENUE INC.,                        :
JONATHAN BLACK,                                      :
FRANKLIN KINARD,                                     :
RENWICK HADDOW, and                                  :
ZOIA KYSELOVA a/k/a ZOE MILLER a/k/a                 :
ZOIA HADDOW a/k/a KOIA KYSELOVA,                     :
                                                     :
                          Defendants.                :
———————————————————————X

      Plaintiffs Hongying Zhao, Juan Liu, Shensi He, Honglei Tian, Haiyan Wang, Jinmei Wang,

Yihe Sun, Shaomin Lu, Ge Gao, Kunyun Zhang, Fengwei Wang, Dandong Wu, Xiaoli Wang,

Peng Wang, Yimin Yang, Jingrui Feng, Ling Shen, Cuirong Li, Hui Zheng, Changli Xiao, Qiuyue

Zu, Xiuhua Wang, Xiaoyun Zhang, Jinli Qin, Shuyan Feng, and Kanwen Zhang and Qian Lu, by

Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 4 of 36

and through their attorneys, Michael J. Kapin, P.C., for their Verified Complaint, respectfully sets forth as follows:

## THE PARTIES

1. Plaintiffs are natural persons, each of whom is a citizen of and resides in the People's Republic of China.

2. Defendant Bar Works USA LLC is a domestic limited liability company organized and operating under the laws of New York, with its principal place of business in New York County, New York.

3. Defendant Bar Works Inc. is a foreign for-profit corporation, incorporated and organized under the laws of the state of Delaware with its principal place of business in New York County, New York.

4. Defendant Bar Works Management Inc is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

5. Defendant Bar Works Chambers St, Inc. is a foreign for-profit corporation, incorporated and organized under the laws of the state of Delaware with its principal place of business in New York County, New York.

6. Defendant Bar Works Tribeca Inc is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

7.  Defendant Bar Works San Francisco 1, LLC is a foreign limited liability company, organized and operating under the laws of California with a place of business in New York County, New York.

8.  Defendant Bar Works Capital, LLC is a foreign limited liability company, organized and operating under the laws of California with a place of business in New York County, New York.

9.  Defendant Bar Works Metropolitan Ave, Inc. is a domestic business corporation organized and operating under the laws of New York, with a place of business in New York County, New York.

10. Defendant Bar Works Eighth Avenue Inc. is a domestic business corporation organized and operating under the laws of New York, with its principal place of business in New York County, New York.

11. Each of the above-mentioned business entity Defendants are collectively hereinafter referred to as the "Bar Works Entities."

12. Defendant Jonathan Black is, upon information and belief, either a natural person whose primary place of business is New York County, New York or the fictitious and assumed name or alias of an unknown person.

13. Defendant Franklin Kinard is, upon information and belief, a natural person whose primary place of business is New York County, New York.

14. Defendant Renwick Haddow is, upon information and belief, a natural person whose primary place of business is New York County, New York.

15. Defendant Zoia Kyselova, who uses the aliases and/or is also known as Zoe Miller, Zoia Haddow and Koia Kyselova is, upon information and belief, a natural person whose primary place of business is New York County, New York.

16. Each of the above-mentioned individual Defendants are collectively hereinafter referred to as the "Individual Defendants"

## FACTUAL BACKGROUND

17. The plaintiffs were approached by representatives of the Bar Works Entities and furnished with private placement style marketing materials.

18. The Bar Works Entities were purportedly selling "units" of co-working desk space within various "Bar Works" branded locations throughout the United States.

19. Upon information and belief, the Individual Defendants, and each of them, was and is an owner, officer, director, employee, representative and/or agent of the Bar Works Entities.

20. Upon information and belief, the Individual Defendants, and each of them, operated and controlled each of the Bar Works Entities in all material respects concerning the below-mentioned transactions that are the subject of this action and concerning all dealings with the Plaintiffs as set forth herein.

21. At all relevant times, the Bar Works Entities and the Individual Defendants regularly conducted business in the State of New York and, particularly in connection with the below-mentioned transactions that are the subject of this action, have enjoyed the benefit of doing business within the State of New York.

## JURISDICTION AND VENUE

22. The Bar Works Entities, and each of them, are subject to the jurisdiction of this Court pursuant to Section 302(a)(l) of the Civil Practice Law and Rules because each of them transacts business in the State of New York.

23. The Individual Defendants, and each of them, is subject to the jurisdiction of this Court pursuant to Sections 301 and 302(a)(l) and (2) of the Civil Practice Law and Rules because he/she/they is/are a resident of the State of New York, transacts business in the State of New York, and/or committed a tortious act within the State of New York.

24. Venue is proper in this County pursuant to Section 503(a) of the Civil Practice Law and Rules because each of the Defendants has as its place of business the "Bar Works" corporate office headquarters at 47 West 39th Street, New York, New York 10018, within the County of New York.

## FACTS COMMON TO ALL COUNTS

25. Upon information and belief, each of the Bar Works Entities was incorporated in 2016 under the guise of being involved in a legitimate business furnishing co-working space to retail customers.

26. The Bar Works Entities were funded through investors who bought "units" in the Bar Works Entities which units represented a purchase of numbered desk space co-working stations at "Bar Works" retail locations throughout the United States.

27. Upon information and belief, the Defendants devised and operated a "Ponzi scheme" wherein the Bar Works Entities paid returns to its investors from new capital paid to the Bar Works Entities by new investors, rather than from profit earned through legitimate investments or business activities.

Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 8 of 36

28. Upon information and belief, the Defendants devised and operated a scheme wherein the Bar Works Entities sold co-working desk space in locations that were never opened and/or never intended to be open for the meaningful operation of business.

29. Upon information and belief, the Defendants devised and operated a scheme wherein the Bar Works Entities sold more co-working desk spaces than existed or ever intended to exist.

30. Upon information and belief, the Bar Works Entities were created as part of a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses.

31. Upon information and belief, to further the scheme and artifice to defraud, and in an effort to shroud the Bar Works Entities in an elaborate and layered cloak of legitimacy, the Bar Works Entities and the Individual Defendants, created private placement memorandum style brochures (the "Offering Brochures").

32. The purpose of the Offering Brochures was to target wealthy investors and induce those wealthy investors to fund the Bar Works Entities based upon the representation that they were acquiring equity in the form of units of an individual "Bar Works" branded location representing one desk space within a "Bar Works" co-working retail space (the "Representations").

33. Upon information and belief, the Representations were false because some or all of the units being offered did not exist and/or were never intended to be delivered.

34. Upon information and belief, Individual Defendants, and each of them, as an owner, officer, director, employee, representative, and/or agent of the Bar Works Entities, knew the Representations were false.

35. Upon information and belief, the Individual Defendants, and each of them, as an owner, officer, director, employee, representative and/or agent of the Bar Works Entities, who operated and controlled the Bar Works Entities in all material aspects, sent a copies of the Offering Brochures to Plaintiffs.

36. The Offering Brochure detail the "Bar Works™ Wealth Builder Program" in which "investors seeking income combined with capital appreciation are now offered the chance to purchase a 10-year lease on up to 100 workspace units at Bar Works […] Furthermore, each lease will benefit from any rent increases derived from the work space. That means your minimum income will grow as customer charges rise and exceed the initial 14%-16% yield in the later years of the lease."

37. According to the Offering Brochures, "[t]he cost of each work space lease is $25,000, plus you receive a free lifetime worldwide membership to Bar Works™ Inc."

38. Notably, the San Francisco "Bar Works" location required a higher $30,000 per unit investment.

39. The Offering Brochure promised monthly income payment to begin 14 days after taking up the offer.

40. The Offering Brochures promised a "reversion bonus of 25% when your lease expires – i.e., Bar Works will repay your initial capital outlay at 125% - $31,250 per $25,000 outlay."

41. The Offering Brochures further provided, "Bar Works™ Inc. will retain the right to buy back your lease at a minimum 125% of initial cost - $31,250 - at any point after the second year anniversary of investment and in the event of a change in group ownership or status."

42. Purportedly to consummate the transactions, Defendants instructed the Plaintiffs to wire $25,000 per "co-working unit" to Defendant Bar Works Inc. to its JP Morgan Chase Bank bank account in New York, New York.

43. A minimum of two (2) units purchased (i.e. $50,000.00) was required to invest in the offering.

44. Based upon the representations of Defendants, the 27 Plaintiffs transferred an aggregate sum of $3,045,000.00 by wire transmission to Bar Works Inc.

45. Despite the Plaintiffs' transfer of an aggregate sum of $3,045,000.00 to Bar Works Inc., the Plaintiffs were never provided with a written subscription agreement as required by New York law, including but not limited to a real estate syndicate offering pursuant to NY GBS §352-e (1)(a), or otherwise were never provided with any other documentation acknowledging the aforementioned transactions, and never received the Bar Works securities.

46. Upon information and belief and as further evidence of Bar Works Entities scheme and artifice to defraud, after the Plaintiffs transferred an aggregate amount of $3,045,000.00 to Bar Works Inc., no notice of sale containing the information required by Form D (17 C.F.R. § 239.500) was filed with the Securities and Exchange Commission as required by 17 C.F.R. § 230.503.

**SPECIFIC TRANSACTION OF EACH PLAINTIFF**

47. On or about August 11, 2016, Hongying Zhao invested in two (2) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $50,000 in Bar Works Tribeca Inc.  Hongying Zhao entered into a "Wealth Starter Lease Agreement" with Bar Works Tribeca Inc., wherein, for Hongying Zhao's payment of $50,000. Hongying

Zhao purportedly purchased a ten year lease for two work spaces, workspace numbers 9063 and 9442.  On the same day Hongying Zhao signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Hongying Zhao subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month.  As of March 2017, Hongying Zhao has not received required rent payments.

48. On or about October 17, 2016, Hongying Zhao additionally invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC.  Hongying Zhao entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Hongying Zhao's payment of $50,000 Hongying Zhao purportedly purchased a ten year lease for two work spaces, workspace numbers 7195 and 8182.  On the same day Hongying Zhao signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Hongying Zhao subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location. As of March 2017, Hongying Zhao has not received required rent payments.

49. On or about July 28, 2016, Juan Liu invested in two (2) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $50,000.00 in Bar Works Tribeca Inc.  Juan Liu entered into a "Wealth Starter Lease Agreement" with Bar Works Tribeca Inc., wherein, for Juan Liu's payment of $50,000 Juan Liu purportedly purchased a ten year lease for two work spaces, workspace numbers 9382 and 8169.  On the same day Juan Liu signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management

Inc., wherein Juan Liu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Juan Liu has not received required rent payments.

50. On or about August 23, 2016, Shensi He invested in two (2) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $50,000.00 in Bar Works Tribeca Inc. Shensi He entered into a "Wealth Starter Lease Agreement" with Bar Works Tribeca Inc., wherein, for Shensi He's payment of $50,000 Shensi He purportedly purchased a ten year lease for two work spaces, workspace numbers 9801 and 8828. On the same day Shensi He signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Shensi He subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Shensi He has not received required rent payments.

51. On or about August 22, 2016, Honglei Tian invested in three (3) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $75,000.00 in Bar Works Tribeca Inc. Honglei Tian entered into a "Wealth Accelerator Lease Agreement" with Bar Works Tribeca Inc., wherein, for Honglei Tian's payment of $75,000 Honglei Tian purportedly purchased a ten year lease for three work spaces, workspace numbers 9488, 9378 and 8253. On the same day Honglei Tian signed a "Wealth Accelerator Sub-Lease Agreement" with Bar Work Management Inc., wherein Honglei Tian subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $969.00 per month. As of March 2017, Honglei Tian has not received required rent payments.

52. On or about September 27, 2016, Honglei Tian additionally invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC. Hong Lei Tian entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Honglei Tian's payment of $50,000 Honglei Tian purportedly purchased a ten year lease for two work spaces, workspace numbers 8886 and 8266. On the same day Honglei Tian signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Honglei Tian subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location. As of March 2017, Honglei Tian has not received required rent payments.

53. On or about August 30, 2016, Haiyan Wang invested in four (4) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $100,000.00 in Bar Works Tribeca Inc. Haiyan Wang entered into a "Wealth Accelerator Lease Agreement" with Bar Works Tribeca Inc., wherein, for Haiyan Wang's payment of $100,000 Hai Yan Wang purportedly purchased a ten year lease for four work spaces, workspace numbers 6967, 8919, 9727 and 7006. On the same day Haiyan Wang signed a "Wealth Accelerator Sub-Lease Agreement" with Bar Work Management Inc., wherein Haiyan Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,292.00 per month. As of March 2017, Hai Yan Wang has not received required rent payments.

54. On or about September 1, 2016, Jinmei Wang invested in five (5) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $125,000.00 in Bar

Works Tribeca Inc. Jinmei Wang entered into a "Wealth Builder Lease Agreement" with Bar Works Tribeca Inc., wherein, for Jinmei Wang's payment of $125,000 Jinmei Wang purportedly purchased a ten year lease for five work spaces, workspace numbers 9437, 7797, 8412, 8939 and 7320. On the same day Jinmei Wang signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Jinmei Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month. As of March 2017, Jinei Wang has not received required rent payments.

55. On or about September 9, 2016, Yihe Sun invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000.00 in Bar Works Capital LLC. Yihe Sun entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Yihe Sun's payment of $60,000 Yihe Sun purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 7886 and 7340. On the same day Yihe Sun signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Yihe Sun subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Yihe Sun has not received required rent payments.

56. On or about September 26, 2016, Lushao Min invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000.00 in Bar Works Capital LLC. Lu Shao Min entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Lushao Min's payment of $60,000, Lushao Min purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 7876 and 7770. On the same day, Lushao Min signed a "San Francisco

Sub-Lease Agreement" with Bar Work Management Inc., wherein Lushao Min subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Lushao Min has not received required rent payments.

57. On or about September 13, 2016, Gao Ge invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000 in Bar Works Capital LLC. Gao Ge entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Gao Ge's payment of $60,000 Gao Ge purportedly purchased a y ninety-nine year lease for two work spaces, workspace numbers 9576 and 7946. On the same day, Gao Ge signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Gao Ge subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Gao Ge has not received required rent payments.

58. On or about September 19, 2016, Kunyun Zhang invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000.00 in Bar Works Capital LLC. Kunyun Zhang entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Kunyun Zhang's payment of $60,000, Kunyun Zhang purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 9007 and 8478. On the same day, Kunyun Zhang signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Kunyun Zhang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Kunyun Zhang has not received required rent payments.

59. On or about December 19, 2016, Kunyun Zhang invested in five (5) units of the 116 Eighth Avenue, New York, New York 10011 "Bar Works" location by investing $125,000.00 in Bar Works Eighth Avenue LLC. Kunyun Zhang entered into a "Wealth Builder Lease Agreement" with Bar Works Eighth Avenue LLC, wherein, for Kunyun Zhang's payment of $125,000, Kunyun Zhang purportedly purchased a ten year lease for five work spaces, workspace numbers 8677, 7040, 9611, 8084 and 7168. On the same day Kunyun Zhang signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Kunyun Zhang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month. As of March 2017, Kunyun Zhang has not received required rent payments.

60. On or about September 28, 2016, Fengwei Wang invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000.00 in Bar Works Capital LLC. Fengwei Wang entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Fengwei Wang's payment of $60,000, Fengwei Wang purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 6980 and 7116. On the same day, Fengwei Wang signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Fengwei Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Fengwei Wang has not received required rent payments.

61. On or about September 21, 2016, Dangdong Wu invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $50,000.00 in Bar Works Capital LLC. Dangdong Wu entered into a "San Francisco Lease

INDEX NO. 155530/2017
RECEIVED NYSCEF: 06/25/2017
Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 17 of 36

Agreement" with Bar Works Capital LLC, wherein, for Dangdong Wu's payment of $50,000, Dangdong Wu purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 8529 and 9857.  On the same day, Dangdong Wu signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Dangdong Wu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month.  As of March 2017, Dangdong Wu has not received required rent payments.

62. On or about October 13, 2016, Dangdong Wu additionally invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC.  Dangdong Wu entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Dangdong Wu's payment of $50,000, Dangdong Wu purportedly purchased a ten year lease for two work spaces, workspace numbers 8569 and 7157.  On the same day, Dangdong Wu signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Dangdong Wu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location.  As of March 2017, Dangdong Wu has not received required rent payments.

63. On or about October 27, 2016, Dangdong Wu invested in five (5) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $125,000.00 in Bar Works Metropolitan LLC.  Dangdong Wu entered into a "Wealth Builder Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Dangdong Wu's payment of $125,000, Dangdong Wu purportedly purchased a ten year lease for five

Case 1:17-cv-08570-NRB   Document 24-1   Filed 02/07/18   Page 18 of 36

work spaces, workspace numbers 7831, 7957, 7042, 8742, and 8966.  On the same day Dangdong Wu signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Dangdong Wu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month.  As of March 2017, Dangdong Wu has not received required rent payments.

64. On or about October 13, 2016, Xiaoli Wang invested in two (2) units of the 615 Sacramento Street, San Francisco, California 94111 "Bar Works" location by investing $60,000.00 in Bar Works Capital LLC.  Xiaoli Wang entered into a "San Francisco Lease Agreement" with Bar Works Capital LLC, wherein, for Xiaoli Wang's payment of $60,000, Xiaoli Wang purportedly purchased a ninety-nine year lease for two work spaces, workspace numbers 9122 and 8527.  On the same day, Xiaoli Wang signed a "San Francisco Sub-Lease Agreement" with Bar Work Management Inc., wherein Xiaoli Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month.  As of March 2017, Xiaoli Wang has not received required rent payments.

65. On or about October 14, 2016, Xiaoli Wang additionally invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC.  Xiaoli Wang entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Xiaoli Wang's payment of $50,000, Xiaoli Wang purportedly purchased a ten year lease for two work spaces, workspace numbers 8760 and 7041.  On the same day, Xiaoli Wang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Xiaoli Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for

Case 1:17-cv-08570-NRB Document 24-1 Filed 02/07/18 Page 19 of 36

guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location. As of March 2017, Xiaoli Wang has not received required rent payments.

66. On or about October 14, 2016, Xiaoli Wang invested in two (2) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $50,000.00 in Bar Works Metropolitan LLC. Xiaoli Wang entered into a "Wealth Starter Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Xiaoli Wang's payment of $50,000, Xiaoli Wang purportedly purchased a ten year lease for two work spaces, workspace numbers 9146 and 7682. On the same day, Xiaoli Wang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Xiaoli Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month. As of March 2017, Xiaoli Wang has not received required rent payments.

67. On or about September 30, 2016, Peng Wang invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC. Peng Wang entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Peng Wang's payment of $50,000, Peng Wang purportedly purchased a ten year lease for two work spaces, workspace numbers 7201 and 7725. On the same day, Peng Wang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Peng Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from

within the workspace location.  As of March 2017, Peng Wang has not received required rent payments.

68. On or about September 27, 2016, Yimin Yang invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC.  Yimin Yang entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Yimin Yang's payment of $50,000, Yimin Yang purportedly purchased a ten year lease for two work spaces, workspace numbers 6936 and 8345.  On the same day, Yimin Yang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Yimin Yang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location.  As of March 2017, Yimin Yang has not received required rent payments.

69. On or about October 12, 2016, Jingrui Feng invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC.  Jingrui Feng entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Jingrui Feng's payment of $50,000, Jingrui Feng purportedly purchased a ten year lease for two work spaces, workspace numbers 9085 and 9649.  On the same day, Jingrui Feng signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Jingrui Feng subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which

Case 1:17-cv-08570-NRB   Document 24-1   Filed 02/07/18   Page 21 of 36

was to be run from within the workspace location. As of March 2017, Jingrui Feng has not received required rent payments.

70. On or about October 11, 2016, Ling Shen invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC. Ling Shen entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Ling Shen's payment of $50,000, Ling Shen purportedly purchased a ten year lease for two work spaces, workspace numbers 7069 and 8820. On the same day, Ling Shen signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Ling Shen subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location. As of March 2017, Ling Shen has not received required rent payments.

71. On or about October 11, 2016, Cuirong Li invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC. Cuirong Li entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Cuirong Li's payment of $50,000, Cuirong Li purportedly purchased a ten year lease for two work spaces, workspace numbers 8749 and 9706. On the same day, Cuirong Li signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Cuirong Li subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from

within the workspace location.  As of March 2017, Cuirong Li has not received required rent payments.

72. On or about October 14, 2016, Hui Zheng invested in five (5) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $125,000.00 in Bar Works Chambers LLC.  Hui Zheng entered into a "Wealth Builder Lease Agreement" with Bar Works Chambers LLC, wherein, for Hui Zheng's payment of $125,000, Hui Zheng purportedly purchased a ten year lease for five work spaces, workspace numbers 7928, 8606, 9956, 8877 and 9231.  On the same day, Hui Zheng signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Hui Zheng subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location.  As of March 2017, Hui Zheng has not received required rent payments.

73. On or about November 7, 2016, Hui Zheng invested in five (5) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $125,000.00 in Bar Works Metropolitan LLC.  Hui Zheng entered into a "Wealth Builder Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Hui Zheng's payment of $125,000, Hui Zheng purportedly purchased a ten year lease for five work spaces, workspace numbers 8777, 7918, 9941, 8590 and 8333.  On the same day, Hui Zheng signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Hui Zheng subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month.  As of March 2017, Hui Zheng has not received required rent payments.

Case 1:17-cv-08570-NRB   Document 24-1   Filed 02/07/18   Page 23 of 36

74.  On or about October 25, 2016, Changli Xiao invested in five (5) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $125,000.00 in Bar Works Metropolitan LLC.  Changli Xiao entered into a "Wealth Builder Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Changli Xiao's payment of $125,000, Changli Xiao purportedly purchased a ten year lease for five work spaces, workspace numbers 9165, 6945, 9743, 8672 and 9526.  On the same day, Changli Xiao signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Changli Xiao subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month.  As of March 2017, Changli Xiao has not received required rent payments.

75.  On or about December 12, 2016, Qiuyue Zu invested in five (5) units of the 116 Eighth Avenue, New York, New York 10011 "Bar Works" location by investing $125,000.00 in Bar Works Eighth Avenue LLC.  Qiuyue Zu entered into a "Wealth Builder Lease Agreement" with Bar Work Eighth Avenue LLC., wherein, for Qiuyue Zu's payment of $125,000, Qiuyue Zu purportedly purchased a ten year lease for five work spaces, workspace numbers 8508, 8008, 9289, 9879 and 9862.  On the same day, Qiuyue Zu signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Qiuyue Zu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month.  As of March 2017, As of March 2017, Qiuyue Zu has not received required rent payments.

76. On or about October 11, 2016, Qiuyue Zu additionally invested in five (5) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $125,000.00 in Bar Works Chambers LLC.  Qiuyue Zu entered into a "Wealth Builder

Lease Agreement" with Bar Works Chambers LLC, wherein, for Qiuyue Zu's payment of $125,000, Qiuyue Zu purportedly purchased a ten year lease for five work spaces, workspace numbers 9729, 9371, 9370, 8860 and 7284. On the same day, Qiuyue Zu signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Qiuyue Zu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month. As of March 2017, As of March 2017, Qiuyue Zu has not received required rent payments.

77. On or about October 12, 2016, Xiuhua Wang invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works Chambers LLC. Xiuhua Wang entered into a "Wealth Starter Lease Agreement" with Bar Works Chambers LLC, wherein, for Xiuhua Wang's payment of $50,000, Xiuhua Wang purportedly purchased a ten year lease for two work spaces, workspace numbers 7001 and 8309. On the same day, Xiuhua Wang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Xiuhua Wang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month along with a share of profits from a fitness business which was to be run from within the workspace location. As of March 2017, Xiuhua Wang has not received required rent payments.

78. On or about October 13, 2016, Xiaoyun Zhang invested in sixteen (16) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $400,000.00 in Bar Works Metropolitan LLC. Xiaoyun Zhang entered into a "Wealth Builder Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Xiaoyun Zhang's payment of $400,000, Xiaoyun Zhang purportedly purchased a ten year lease for

Case 1:17-cv-08570-NRB   Document 24-1   Filed 02/07/18   Page 25 of 36

sixteen work spaces, workspace numbers 8859, 8846, 7215, 8174, 9903, 8159, 7631, 9413, 9830, 8203, 9700, 8318, 8213, 9444, 9865, and 7360.  On the same day Xiaoyun Zhang signed a "Wealth Builder Sub-Lease Agreement" with Bar Work Management Inc., wherein Xiaoyun Zhang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $5,333.00 per month.  As of March 2017, Xiaoyun Zhang has not received required rent payments.

79. On or about October 21, 2016, Jinli Qin invested in two (2) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $50,000.00 in Bar Works Metropolitan LLC.  Jinli Qin entered into a "Wealth Starter Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Jinli Qin's payment of $50,000, Jinli Qin purportedly purchased a ten year lease for two work spaces, workspace numbers 7719 and 9762.  On the same day, Jinli Qin signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Jinli Qin subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month.  As of March 2017, Jinli Qin has not received required rent payments.

80. On or about October 26, 2016, Shuyan Feng invested in three (3) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $75,000.00 in Bar Works Metropolitan LLC.  Shuyan Feng entered into a "Wealth Accelerator Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Shuyan Feng's payment of $75,000, Shuyan Feng purportedly purchased a ten year lease for three work spaces, workspace numbers 8665, 7493 and 8398.  On the same day, Shuyan Feng signed a "Wealth Accelerator Sub-Lease Agreement" with Bar Work Management Inc., wherein Shuyan Feng subleased the purchased workspaces to Bar Works Management Inc.

in exchange for guaranteed profits in the amount of $969.00 per month.  As of March 2017, Shuyan Feng has not received required rent payments.

81. On or about November 3, 2016, Kanwen Zhang invested in two (2) units of the 242 Metropolitan Avenue, Brooklyn, New York 12111 "Bar Works" location by investing $50,000.00 in Bar Works Metropolitan LLC.  Kanwen Zhang entered into a "Wealth Starter Lease Agreement" with Bar Works Metropolitan LLC, wherein, for Kanwen Zhang's payment of $50,000, Kanwen Zhang purportedly purchased a ten year lease for two work spaces, workspace numbers 7503 and 7227.  On the same day, Kanwen Zhang signed a "Wealth Starter Sub-Lease Agreement" with Bar Work Management Inc., wherein Kanwen Zhang subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month.  As of March 2017, Kanwen Zhang has not received required rent payments.

82. On or about August 17, 2016, Qian Lu invested in five (5) units of the 70 White Street, New York, New York 10013 "Bar Works" location by investing $125,000.00 in Bar Works Tribeca Inc.  Qian Lu entered into a "Wealth Builder Lease Agreement" with Bar Works Tribeca Inc., wherein, for Qian Lu's payment of $125,000, Qian Lu purportedly purchased a ten year lease for five work spaces, workspace numbers 8187, 8609, 6993, 7266 and 7888. On the same day, Qian Lu signed a "Wealth Builder Lease Agreement" with Bar Work Management Inc., wherein Qian Lu subleased the purchased workspaces to Bar Works Management Inc. in exchange for guaranteed profits in the amount of $1,667.00 per month. As of March 2017, Qian Lu has not received required rent payments.

83. On or about October 17, 2016, Qian Lu invested in two (2) units of the 95 Chambers Street, New York, New York 10007 "Bar Works" location by investing $50,000.00 in Bar Works

Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 27 of 36

Chambers LLC.  Qian Lu entered into a "Wealth Starter Lease Agreement" with Bar Works

Chambers LLC, wherein, for Qian Lu's payment of $50,000, Qian Lu purportedly

purchased a ten year lease for two work spaces, workspace numbers 7566 and 7240.  On

the same day, Qian Lu signed a "Wealth Starter Sub-Lease Agreement" with Bar Work

Management Inc., wherein Qian Lu subleased the purchased workspaces to Bar Works

Management Inc. in exchange for guaranteed profits in the amount of $625.00 per month

along with a share of profits from a fitness business which was to be run from within the

workspace location.  As of March 2017, Qian Lu has not received required rent payments.


## DOMINATION AND CONTROL

84. Each of the Individual Defendants is the alter egos of each of the Bar Works Entities, and as

such exercised complete domination of entities with respect to the facts herein, and such

domination was used to commit a wrong against Plaintiffs which resulted in the Plaintiffs'

injuries herein.

85. Upon information and belief, the Individual Defendants caused the Bar Works Entities to

restructure and reconfigure in order to avoid liability under each of the Plaintiff's contracts.

86. Upon information and belief, the Individual Defendants caused the Bar Works Entities to

transfer assets without proper and/or due consideration, to unknown corporations.

87. Upon information and belief, the Individual Defendants used Plaintiffs investment funds for

their personal expenditures, wholly unrelated to any legitimate business purpose.

88. The Bar Works Entities failed to observe corporate formalities in their transfer of business

assets to avoid their creditors.

Case 1:17-cv-08570-NRB    Document 24-1    Filed 02/07/18    Page 28 of 36

89. The Individual Defendants exercise and exercised complete dominion and control over the transfer of assets of the Bar Works Entities.

## DEFENDANTS BREACH THEIR AGREEMENT WITH PLAINTIFFS

90. Defendants failed to perform under the contracts with Plaintiffs in that they did not make required rental payments as agreed to in each of Plaintiff's contracts.

91. Defendants failed to perform under the contracts in that they failed to open "Bar Works" locations as agreed.

92. Defendants failed to perform under the contracts in that they purported to change ownership of the Bar Works Entities or otherwise changed the Bar Works Entities positions with respect to the Plaintiffs' property interests, but failed to repay Plaintiffs their investments as is/was required under each of the Plaintiff's contracts.

93. Defendants otherwise breached the contracts with Plaintiff without any intention of performing.

## FIRST CAUSE OF ACTION AGAINST BAR WORKS MANAGEMENT INC, BAR WORKS CHAMBERS ST, INC., BAR WORKS TRIBECA INC, BAR WORKS SAN FRANCISCO 1, LLC, BAR WORKS CAPITAL, LLC, BAR WORKS METROPOLITAL AVE, INC. and BAR WORKS EIGHTH AVENUE INC.,
### (Breach of Contract)

94. Each of the Plaintiffs has duly performed all the conditions required of it under their respective contracts, namely, funding their investments in the "Bar Work" business, as set forth above.

95. Defendants failed and neglected to perform as required under each contract.

96. Defendants owe Plaintiff, collectively, $3,806,250.00, representing one hundred and twenty five percent (125%) of Plaintiffs aggregate investment amount, pursuant to the terms of each Plaintiff's contracts, along with past due rental payments, costs of this action

Case 1:17-cv-08570-NRB   Document 24-1   Filed 02/07/18   Page 29 of 36

and reasonable attorneys' fees.

97. By reason of the foregoing, Plaintiff has been damaged in the amount of at least $3,806,250.00, and in such further amounts as may be proven at trial.

## SECOND CAUSE OF ACTION AGAINST BAR WORKS INC.
### (Unjust Enrichment)

98. Defendant Bar Works Inc. received the aggregate sum of $3,045,000.00 from the Plaintiffs without consideration to the Plaintiffs for the $3,045,000.00 transferred.

99. Bar Works Inc.'s retention of the $3,045,000.00 received from the Plaintiffs is unjust and has operated to the Plaintiffs' detriment and caused the Plaintiffs to suffer monetary and other damages.

100.    By reason of the foregoing, the Plaintiffs are entitled to a judgment against Bar Works Inc. in the amount of at least $3,045,000.00 with interest thereon.

## THIRD CAUSE OF ACTION AGAINST BAR WORKS INC.
### (Money Had and Received)

101.    By the aforesaid acts, Bar Works Inc. received and retained money that it is not entitled to.

102.    Bar Works Inc. benefitted from the receipt of the Plaintiffs' $3,045,000.00, and under principles of equity and good conscience, it should not be permitted to keep the money.

103.    By reason of the foregoing, the Plaintiffs are entitled to a judgment against Bar Works Inc. in the amount of at least $3,045,000.00 with interest thereon.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS
### (Fraud)

104.    The Representations contained in the Offering Brochures, and the representations Defendants made concerning the identities of Bar Works' management and officers, was false and known to be false by Defendants.

105.    Upon information and belief and in furtherance of the scheme and artifice to defraud, Defendants sold unregistered Bar Works Entities securities to the Plaintiffs.

106.    As the agent and/or representative of the Bar Works Entities, the Individual Defendants made the Representations to the Plaintiffs in furtherance of the scheme and artifice to defraud and for the purpose of inducing the Plaintiffs to transfer the aggregate sum of $3,045,000.00 to Bar Works Inc.

107.    The Plaintiffs were justified in relying on the Representations.

108.    The Plaintiffs transferred $3,045,000.00 to Bar Works Inc. on the reasonable belief that they, in return, were acquiring an equity interest in a legitimate and profitable business, namely, particular "Bar Works" branded co-working desk spaces in retail locations in major cities in the United States.

109.    Instead, Defendants absconded with the Plaintiffs' $3,045,000.00

110.    By reason of the foregoing, the Plaintiffs are entitled to a judgment against Defendants in the amount of at least $3,045,000.00 with interest thereon.

111.    In addition, because the Individual Defendants were owners, officers, directors, employees, agents and/or representatives of the Bar Works Entities, were in complete control of the Bar Works Entities, and had knowledge of and participated in the scheme and artifice to defraud, the Plaintiffs are entitled to a judgment against Individual Defendants in the amount of at least $3,045,000.00 with interest thereon.

112.     By reason of the foregoing, the Plaintiffs are also entitled to punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION AGAINST BAR WORKS MANAGEMENT, INC.
### (Breach of Fiduciary Duty)

113.     Defendant Bar Works Management, Inc., by virtue of its management/sub-lease agreements executed with each of the Plaintiffs in respect to their leases of the Bar Works workspaces, became the manager and trustee with respect to the Plaintiffs' property interests in those leases.

114.     Plaintiffs did not retain the power to retrieve or otherwise exercise control over their purported workspace leases, but rather entrusted Bar Works Management, Inc. to control, oversee, direct, use, dispose, and profit from the leases at Bar Works Managements' direction and without the guidance or control of the Plaintiff investors, for the Plaintiffs' benefit.

115.     As trustee, Bar Works Management, Inc. had a fiduciary duty to conduct its management of the Plaintiffs' property with the utmost good faith and undivided loyalty toward the Plaintiffs throughout the relationship.

116.     Bar Works Management, Inc. failed to fulfill its obligations as fiduciary and instead engaged in self-dealing, duplicity, concealment, misdirection of trust assets, and failure to pay over trust proceeds to the Plaintiffs in a timely fashion.

117.     Plaintiffs were thereby damaged by Bar Works Management, Inc.'s breach of its duty in the form of unpaid rental income, unpaid expected interest or other dividend payments, and the loss or diminution of their valuable property interests in the Bar Works retail locations and the workspaces therein in an amount to be computed at trial but at least $3,045,000.00.

## SIXTH CAUSE OF ACTION AGAINST INDIVIDUAL DEFENDANTS
### (Veil Piercing)

118.    Upon information and belief, at the time of the transaction with the Plaintiffs, the Individual Defendants, and each of them, was in direct and complete control and domination of the finances, policies, activities, business practices and transactions of the Bar Works Entities, to the extent that at the time of the afore-and below-pleaded transaction, the Bar Works Entities, and each of them, had no separate mind, will or existence of its own apart from the Individual Defendants.

119.    Upon information and belief, the Bar Works Entities, and each of them, is the alter ego of the Individual Defendants, and each of them,

120.    Upon information and belief, the Individual Defendants, and each of them, blatantly disregarded the corporate form of the Bar Works Entities, and utilized and manipulated the Bar Works Entities for their personal advantage.

121.    Upon information and belief, the Individual Defendants exercised total and exclusive domination over the Bar Works Entities.

122.    Upon information and belief, the Individual Defendants made all of the decisions for the Bar Works Entities.

123.    Such control and domination has been used by the Bar Works Entities to commit wrongs against the Plaintiffs, including, but not necessarily limited to, misappropriation and conversion of the Plaintiffs' funds for personal use.

124.    Additionally, and in the alternative, there was such a unity of interests and ownership between and among the Individual Defendants and the Bar Works Entities, that the independence of the Bar Woks Entities had in effect ceased or had never even begun.

125.     This domination and control proximately caused the Plaintiffs to suffer damages as complained of herein.

126.     Accordingly, adherence to the fiction of a separate identity of the Individual Defendants and the Bar Works Entities would serve only to defeat justice and equity by permitting the economic entity to escape liability arising out of an operation conducted by one corporation for the benefit of the whole enterprise.

127.     Therefore, the corporate veil must be pierced and the Individual Defendants made liable to the same extent as the Bar Works Entities.

**WHEREFORE**, the Plaintiffs respectfully pray for the following relief:

1. Compensatory damages;

2. Restitution of unjust enrichment obtained and retained by the Defendants;

3. Punitive damages as allowed by law;

4. Attorneys' fees and costs;

5. Pre-judgment and post-judgment interest on the Plaintiffs' damages as allowed by law; and

6. Such other and further legal and equitable relief as the Court, in its discretion, may deem appropriate.

Dated:  June 25, 2017
       New York, New York

                                     Yours, etc.,

                                       MICHAEL J. KAPIN, P.C.
                                       *Attorney for Plaintiffs*

                                       _____
                                         MICHAEL J. KAPIN, ESQ.

305 Broadway - Suite 1004
New York, New York 10007
(212) 513-0500

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

————————————————————————X

HONGYING ZHAO, JUAN LIU, SHENSI HE,       :
HONGLEI TIAN, HAIYAN WANG, JINMEI WANG,   :
YIHE SUN, SHAOMIN LU, GE GAO,      :     Index No. 155530/2017
KUNYUN ZHANG, FENGWEI WANG,      :
DANDONG WU, XIAOLI WANG, PENG WANG,    :
YIMIN YANG, JINGRUI FENG, LING SHEN,     :     **VERIFICATION**
CUIRONG LI, HUI ZHENG, CHANGLI XIAO,     :
QIUYUE ZU, XIUHUA WANG, XIAOYUN ZHANG,   :
JINLI QIN, SHUYAN FENG, KANWEN ZHANG    :
and QIAN LU,                            :
                                    :
                  Plaintiffs,     :
                                    :
        -against-              :
                                    :
BAR WORKS USA LLC,               :
BAR WORKS INC.,                  :
BAR WORKS MANAGEMENT INC,        :
BAR WORKS CHAMBERS ST, INC.,       :
BAR WORKS TRIBECA INC,           :
BAR WORKS SAN FRANCISCO 1, LLC,     :
BAR WORKS CAPITAL, LLC,           :
BAR WORKS METROPOLITAL AVE, INC.,    :
BAR WORKS EIGHTH AVENUE INC.,       :
JONATHAN BLACK,                :
FRANKLIN KINARD,              :
RENWICK HADDOW, and           :
ZOIA KYSELOVA a/k/a ZOE MILLER a/k/a    :
ZOIA HADDOW a/k/a KOIA KYSELOVA,     :
                                    :
                  Defendants.     :
————————————————————————X

       MICHAE J. KAPIN, an attorney duly admitted to practice before the Courts of the State of New

York, affirms the following to be true under the penalties of perjury:    I am an attorney at

MICHAEL J. KAPIN, P. C, the attorneys of record for all of the above-captioned Plaintiffs. I have read the

annexed FIRST AMENDED VERIFIED COMPLAINT and know the contents thereof and the same are

true to my knowledge, except those matters therein which are stated to be alleged upon information and

belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon facts, records, and other pertinent information contained in my files.

This verification is made by me because Plaintiffs are not presently in the county wherein I maintain my offices.

Dated:   June 25, 2017

New York, New York

MICHAEL J. KAPIN, P.C.

*Attorney for Plaintiffs*

_____

MICHAEL J. KAPIN, ESQ.

305 Broadway - Suite 1004

New York, New York 10007
(212) 513-0500