LAW OFFICES OF
# MICHAEL J. KAPIN

MICHAEL J. KAPIN *+

305 BROADWAY, SUITE 1004
NEW YORK, NEW YORK 10007

TELEPHONE 212.513.0500
FACSIMILE 866.575.5019

* PROFESSIONAL CORPORATION
+ ADMITTED IN CALIFORNIA
  AND NEW YORK

**VIA ECF ONLY**          March 14, 2018
Honorable Naomi Reice Buchwald
United States District Court, Southern District
500 Pearl Street
New York, New York 10007

Re:     *Hongying Zhao, et al. v. JPMorgan Chase & Co., et ano, 17-CIV-8570 (NRB)*

Dear Judge Buchwald:

      I represent all 245 Plaintiffs in the above-referenced action. This letter shall serve as Plaintiffs' response to Defendants' pre-motion letter submitted on March 2, 2018.

<u>Actual Knowledge Is Adequately Pled in the First Amended Complaint</u>

      Defendants' cite *Lerner v. Fleet Bank, N.A.,* 459 F.3d 237 (2d Cir. 2006) to assert that Plaintiffs have failed to plead 'actual knowledge.' But *Lerner* does not require a plaintiff to have supernatural insight. "Lerner does not require the plaintiff to plead actual knowledge on the part of a defendant; if a party pleads facts leading to a 'substantial inference' that will be enough." *Adelphia Recovery Tr. v Bank of Am., N.A.*, 624 F Supp 2d 292, 314 [SDNY 2009]. "In determining the adequacy of Plaintiffs' fraud pleadings under these various requirements, we view the alleged facts in their totality, not in isolation." *Loreley Fin. (Jersey) No. 3 Ltd. v Wells Fargo Sec., LLC*, 797 F3d 160, 171 (2d Cir 2015).

      Looking at the totality of the pleading, Plaintiffs have set forth facts which give rise to a strong inference that Chase had actual knowledge of the "Bar Works" fraud. "The inference 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Adelphia* at 313-314. Such an inference may be drawn from circumstantial evidence of "conscious misbehavior or recklessness," *Id.*, or willful blindness to clearly fraudulent activity, see ex. *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F.Supp.2d 349, 368 (S.D.N.Y. 2007).

      The most salient facts which support Chase's actual knowledge involve the notoriety and infamy of the Bar Works scheme's mastermind, Renwick Haddow[1]. (See FAC at ¶¶ 10-12). While Haddow may not be as famous as other well-known financial fraudsters like Bernie Madoff, Plaintiffs have plead that Haddow's notoriety gave JPMC actual knowledge that a fraud was being

---

[1]In *Rosner*, the plaintiff claimed the bank had actual knowledge of two identical prior schemes based on the involvement of similar persons and entities. There, the court ruled that the involvement of some of the same people and successor companies was too remote to establish the bank's actual knowledge. *See Rosner v Bank of China*, 06 CV 13562, 2008 WL 5416380, at *9 [SDNY Dec. 18, 2008], affd, 349 Fed Appx 637 [2d Cir 2009] (*"Rosner does not allege facts explaining how BoC–M could have been put on notice regarding activity that took place eight years prior and was limited to an entirely separate branch, BoC–HK."*). Plaintiffs have pled the involvement of a single person, Haddow, and his well-publicized fraud, which actually put Chase on notice that criminal behavior was afoot.

perpetrated. Defendants were *uniquely* positioned to know of Haddow's involvement, since he disclosed his true identity to JPMC but hid behind a fictitious identity in communications with investors. Plaintiffs expect that discovery of the documents identified below will substantiate their allegations, that a known international fraudster, an individual banned from acting as a company director in his home country, attracted the notice of Chase employees following standard banking practices and Chase's own KYC/AML policies. Plaintiffs expect to find routine alerts triggered by the defendants' transaction monitoring system, the contents of the defendants' KYC file on Renwick Haddow, internal communications among Chase employees discussing Haddow's prior schemes, and other internal documents and communications indicating Chase's actual knowledge.

Additional facts relied on by Plaintiffs include: (i) that Defendants had actual notice that Bar Works was operating with a managing director named "Jonathan Black" who was completely fictitious (FAC at ¶¶ 10-11); (ii) that Defendants actually visited Bar Works locations and were able to see for themselves that Bar Works was raising more investment units than the Bar Works locations could possibly support (FAC at ¶ 16); and, (iii) that investors who were investing in corporations other than Bar Works Inc. were sending their money to a single account at Chase related to Bar Works Inc. (FAC at ¶ 14). These allegations, along with Chase's knowledge of Haddow's involvement, and the other allegations in the FAC, when taken in their totality, support a strong inference that Chase had actual knowledge of the "Bar Works" scheme.[2]

## Substantial Assistance

Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur. The general rule is that mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff. *Lerner* at 295. However, New York courts have found substantial assistance, even without a fiduciary duty owed to the plaintiff, when such nonfeasance amounts to knowing facilitation of a crime. *See Elmaliach v Bank of China Ltd.*, 110 AD3d 192, 206–07 (1st Dept 2013) ("[h]ere, it is alleged that BOC knowingly facilitated acts of terrorism against innocent civilians, and did so after being put on notice by officials of PRC's central bank at the insistence of Israeli government officials. BOC's argument that it was doing nothing more than "routine" banking services is unpersuasive. Although New York does not generally recognize a duty on the part of banks to non-customers, that does not mean that New York policy would prohibit recovery under the alleged facts, if proven."). Plaintiffs have alleged in detail Chase's motive for and means of facilitating Haddow's scheme: See FAC at ¶ 30 *detailing the specific benefit Chase received*; FAC at ¶ 58 *detailing non-routine wire transfers with large sums of money going to known money laundering havens*; and, FAC at ¶¶ 59-73 *the extensive red-flag systems which either were or should have been in place*. Without the benefit of discovery, Plaintiffs cannot be sure of the lengths that Defendants went to override or ignore their internal policies and procedures, and usual and accepted banking practices, but, as mentioned above, the law emanating from *Lerner* does not require a plaintiff to posses such knowledge in order to survive a motion to dismiss. Contrary to defendants' allegations, it is not *only* JPMC's failure to abide by its own policies, but also transfers

---

[2] In addition, Plaintiffs have pled a sufficient motive and benefit actually received by Chase (FAC at ¶ 30, "[u]pon information and belief, [...], Defendants made tens of thousands of dollars in transaction fees on the 622 account, an amount, which in proportion to the deposit size, made their illicit partnership with Bar Works Inc. and Renwick Haddow more profitable than either the Enron or the Madoff schemes."

Honorable Naomi Reice Buchwald
March 14, 2018
Page Three

to luxury goods purveyors and foreign accounts outside of the scope of Bar Works' business, which "cannot be presumed routine or typical banking transactions," *Mazzaro de Abreu v Bank of Am. Corp.*, 06 CIV. 673 (LLM), 2008 WL 3171560, at *4 (SDNY Aug. 6, 2008), transactions which by their character were neither "routine nor typical," and amounted to substantial assistance. *Id.*

## Negligence and Unjust Enrichment

The New York Appellate Division, First Department, in *Elmaliach*. has stated: "We do not find case law to support the argument that except for trusts and fiduciary accounts, a bank can *never* be held liable to non-customers and particularly when addressing allegations such as those before us in this action. [...] a tortfeasor's compliance with relevant laws and regulations will not insulate it from liability if it fails to act objectively reasonably."*Elmaliach v Bank of China,* 110 A.D.3d 192, 206–07. Plaintiffs' allegations that Defendants had actual knowledge of and continued to process transactions (for which defendants received unusually high fees) suffices, at the pleading stage, to state a sufficient claim under New York law for negligence and unjust enrichment. And while defendants' compliance or non-compliance with banking regulations may not in and of itself create a right of private action, "[c]ompliance with a legislative enactment or an administrative regulation does not prevent a finding of negligence where a reasonable (person) would take additional precautions." *Lerner* at 289, citing Restatement [Second] of Torts § 288C (1965).

## KYC/AML Documents are Generally Discoverable

Defendants claim that allegations concerning non-compliance with accepted KYC/AML practices should be stricken as immaterial and unfairly prejudicial[3]. While the defendants' position concerning disclosure of the SAR or material made in preparation for the filing of an SAR, may be correct, there is an entire universe of discoverable material that would nonetheless tend to reveal the defendants' non-compliance with industry standard practices. These include "internal bank emails and reports not of an evaluative nature," *In re JPMorgan Chase Bank, N.A.*, 799 F3d 36, 41 (1st Cir 2015), citing *Wiand v. Wells Fargo Bank, N.A.*, 981 F.Supp.2d 1214, 1218 (M.D.Fla.2013), including the results of internal investigations into suspicious activity generated in the course of usual business to protect the bank' interests, not specifically related to the preparation of a SAR. *Id.* Plaintiffs allege that discovery of such materials, in compliance with the restrictions of 12 C.F.R § 21.11(k)(1)(i), will reveal that the defendants knew the identity of Renwick Haddow and the significance of his participation in the Bar Works scheme, knew that the transfers alleged in the FAC were fraudulent or related to fraudulent activity unconnected with the stated business of their customer, Bar Works, but that the defendants nonetheless remained silent and allowed the fraudulent transactions to continue unimpeded, despite normal banking practice, and the defendants' own internal policies, mandate that an account in such circumstances be frozen or closed entirely.

Sincerely,

*/s/ Michael J. Kapin*

Michael J. Kapin

---

[3] To the extent Defendants are correct that statutory provisions prevent them from admitting or denying any particular allegation of the Amended Complaint, they could simply plead to that effect in their Answer.