UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
HONGYING ZHAO, et al.,

                    Plaintiffs,

          - against -                          **MEMORANDUM AND ORDER**

JPMORGAN CHASE & CO. and
JPMORGAN CHASE BANK, N.A.,                      17 Civ. 8570 (NRB)

                    Defendants.
-------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


     Hongying Zhao and 244 other individuals ("plaintiffs") bring this action against JPMorgan Chase Bank, N.A. ("JPMC") and its holding company JP Morgan Chase & Co. ("JPMC Holding Company") (together, "defendants").  The First Amended Complaint ("FAC") asserts the following claims against both defendants: (1) knowing participation in a breach of trust, (2) aiding and abetting embezzlement, (3) aiding and abetting breach of fiduciary duty, (4) aiding and abetting conversion, (5) aiding and abetting fraud, (6) unjust enrichment, (7) commercial bad faith, and (8) gross negligence.

     Presently before the Court is defendants' motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6) or, in the alternative, to strike certain allegations pursuant to Rule 12(f).  For the reasons set forth below,

defendants' motion to dismiss is granted.  Defendants' motion to strike is denied as moot.

## BACKGROUND[1]

The Complaint's primary allegation is that defendants knew or were willfully blind to the fact that non-party Renwick Haddow and his company "Bar Works" were perpetrating a fraud on their investors.  Bar Works ostensibly owned and rented out co-working stations in retail spaces across the United States, leasing specific stations to investors in exchange for monthly payments.  FAC Ex. A, ECF 24-1 ¶¶ 7-8, 18, 39, 47-83.  In reality, Haddow operated a Ponzi scheme in which Haddow solicited investments for Bar Works locations that did not exist and paid returns using the contributions of new investors.  Id. ¶¶ 27-29.

Haddow began soliciting investments for Bar Works in early 2016 under the fictitious alias "Jonathan Black."  Id. ¶¶ 10, 26.  Plaintiffs allege that Haddow adopted this alias on account of his well-publicized history as a corporate fraudster.  According to the FAC, publicization of Haddow's checkered past began in or about November 2008, when the Companies Investigation Branch of the Insolvency Service of the United Kingdom disqualified Haddow from serving as a director of any company registered in the U.K. on

---

[1] The following facts are largely drawn from the FAC, ECF No. 26, and are assumed to be true for purposes of this motion.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).

account of his involvement in a deceptive corporate scheme.  Id. ¶ 12.  Later, in July 2013, the U.K. Financial Conduct Authority brought a civil action against Haddow and others for allegedly running various unauthorized collective investment schemes.  A U.K. court ruled against Haddow and an appeals court dismissed his appeal – decisions that were publicized in the British press.  Id.

On or about February 4, 2016, Haddow opened depository bank accounts for two Bar Works entities at JPMC (the "622 account" or the "379 account")[2] and in the process disclosed his true identity to at least one JPMC employee.  FAC ¶ 13.  At some point, defendants saw the private placement memorandum ("PPM") Haddow provided to plaintiffs to generate interest in Bar Works investments.  Id. ¶ 130.  Haddow used the accounts to receive funds from investors, requesting that each plaintiff send their contributions via wire transfer to either the 622 or the 379 account.

Plaintiffs cite several examples of account activity that they allege alerted or should have alerted JPMC to the fraudulent nature of the Bar Works enterprise.  For one, money was co-mingled and Haddow was allowed to withdraw the funds without limitation, id. ¶¶ 14, 25, which he did to pay for lavish personal expenses, including luxury car purchases, id. ¶ 75.  Nearly $4,000,000 in investor money was wired into the 379 or 622 accounts and

---

[2] The 622 account belonged to Bar Works Inc. and the 379 account belonged to Bar Works 7th Avenue Inc.  FAC ¶ 23.

immediately transferred to "known overseas money laundering havens such as Mauritus, the Seychelles and Morocco." Id. ¶¶ 18, 58.  On one occasion in March of 2017, an individual plaintiff attempted to send a $35,000 investment to Bar Works Inc., but the funds were not properly routed to the JPMC accounts.  Id. ¶ 78.  Shortly thereafter, plaintiff became aware of Haddow's involvement in the Bar Works scheme and his bank put in a recall request to JPMC. Rather than return the money, JPMC held the funds for three weeks before releasing them to Haddow.  Id.  The FAC alleges that these actions violated various internal JPMC policies and triggered unspecified bank monitoring systems.[3]  FAC ¶¶ 26, 69-70, 74-75, 89, 105, and 122.

According to the FAC, transaction activity from Haddow's accounts at JPMC generated tens of thousands of dollars in transaction fees for the bank.  Id. ¶ 30.  Plaintiffs further allege that fees associated with the transactions constituted a "large percentage of the wired amount."  Id. ¶ 31.  As a result of JPMC's actions, plaintiffs allege that they lost nearly $17 million in capital that they had invested in Bar Works.

---

[3] The FAC is peppered with irrelevant and inadmissible accusations that JPMC violated various laws and regulations without private causes of action including, inter alia, the Bank Secrecy Act, the USA Patriot Act, and relevant New York laws and regulations.  FAC ¶¶ 57-68, 73, 76-77, and 161-162.  Paragraph 46 discusses JPMC's role in the collapse of Enron, and a subsequent written agreement with the Federal Reserve Bank of New York and the New York State Banking Department.  Given our subsequent dismissal of the FAC in its entirety, we do not reach defendants' request that these pleadings be stricken pursuant to Rule 12(f).

On June 25, 2017, 27 plaintiffs in the present action filed a lawsuit against Bar Works and three individual defendants in New York State Supreme Court, New York County asserting various state law causes of action, including, inter alia, fraud and breach of fiduciary duty.  See FAC Ex. A ("State Court Complaint"), ECF No. 26-1; see also Zhao v. Bar Works USA LLC, etc. et al., Index No. 155530/2017.  The state court action resulted in default judgment against Haddow and others.  Id., NYSCEF Docket No. 162.  On June 30, 2017, the SEC filed a securities fraud action against Haddow and Bar Works entities.  Securities and Exchange Commission v. Haddow et al, 1:17-cv-04950.

The initial complaint in this action was filed by a subset of 27 of the current plaintiffs on November 6, 2017.  See Compl., ECF No. 1.  Plaintiffs subsequently filed the FAC on February 7, 2018, adding an additional 218 plaintiffs.  See FAC, ECF No. 24.  On May 14, 2018, defendants filed the motion pending before the Court.  ECF No. 36.  Oral argument was held on February 6, 2019.  See Feb. 6, 2019 Hr'g Tr., ECF No. 50.

## DISCUSSION

### I. Pleading Standards

On a motion to dismiss under Rule 12(b)(6), we must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor.  City of Providence v. BATS Glob. Mkts., Inc., 878 F.3d 36, 48 (2d Cir. 2017).  To survive

5

a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In asserting a claim sounding in fraud, plaintiffs must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b) by "stat[ing] with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  "Plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted).  "Rule 9(b) applies to 'all averments of fraud.'  This wording is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (internal citation omitted).  "Claims of commercial bad faith, like claims of fraud, are governed by the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 293 (2d Cir. 2006).

## II.   Holding Company Liability

As an initial matter, defendants move to dismiss all claims against the JPMC Holding Company, as none of the allegations of wrongdoing relate to that entity.  See ECF No. 37 at 10.  Here, plaintiffs fail to respond to defendants' Holding Company arguments by submitting a "partial response" to the motion to dismiss that "may be deemed an abandonment of the unmentioned claims."  Jackson v. Fed. Exp., 766 F.3d 189, 195 (2d Cir. 2014) ("[A] court may ... infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); see also Felske v. Hirschmann, No. 10 Civ. 8899 (RMB), 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) ("A plaintiff effectively concedes a defendant's arguments by his failure to respond to them.").

The FAC's sole allegation against the holding company is that it created and implemented Anti-Money Laundering ("AML") policies governing how JPMC managed and monitored the 622 and 379 bank accounts.  FAC ¶ 37.  But creation and implementation of AML policies here is not sufficient to bring claims against a party that was not involved in any alleged non-compliance with those policies.  See Hershfeld v. JM Woodworth Risk Retention Grp., Inc., No. 16 Civ. 6369 (BMC), 2017 WL 1628886, at *4 (E.D.N.Y. May 1, 2017) (noting courts refuse to "impute the operating activities of

an indirectly owned limited liability company to a parent holding company."); see also In re WorldCom, Inc. Sec. Litig., No. 02 Civ. 3288 (DLC), 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) ("[I]t is a well-settled principle of corporate law that 'a parent corporation and its subsidiary are regarded as legally distinct entities.'") (internal citations omitted). Accordingly, the Court dismisses all claims against the JPMC Holding Company. We now proceed to a discussion of the merits of plaintiffs' claims as to JPMC.

## III.  Aiding and Abetting Breach of Fiduciary Duty

We first turn to plaintiffs' knowing participation in a breach of trust (Count I) and aiding and abetting breach of fiduciary duty (Count III) claims, which are substantially identical for purposes of our analysis. See In re Sharp Int'l Corp., 403 F.3d 43, 49 (2d Cir. 2005) (equating claim for knowing participation in a breach of trust with claim for aiding and abetting breach of fiduciary duty). Knowing participation in a breach of trust and aiding and abetting breach of fiduciary duty both require that plaintiffs plead: 1) breach by a fiduciary of obligations to another, 2) that defendants had "actual knowledge" of the primary violation, and 3) that defendants "substantially assisted" in the primary violation. See Lerner, 459 F.3d at 294; see also SPV OSUS Ltd. v. AIA LLC, No. 15 Civ. 619 (JSR), 2016 WL 3039192, at *6 (S.D.N.Y. May 26, 2016), aff'd sub nom. SPV OSUS Ltd. v. UBS AG,

8

882 F.3d 333 (2d Cir. 2018).  "Actual knowledge, not mere notice or unreasonable unawareness, is therefore essential." Samuel M. Feinberg Testamentary Tr. v. Carter, 652 F. Supp. 1066, 1082 (S.D.N.Y. 1987); see also Kolbeck v. LIT Am., Inc., 939 F. Supp. 240, 246 (S.D.N.Y. 1996) ("New York common law ... has not adopted a constructive knowledge standard for imposing aiding and abetting liability. Rather, New York courts and federal courts in this district, have required actual knowledge."); see also Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84, 92 (2d Cir. 2010) (noting actual knowledge requirement is more stringent than actual notice requirement).  Complaints that do not clearly allege actual knowledge are "legally insufficient due to ambiguity in the allegations." H2O Swimwear, Ltd. v. Lomas, 560 N.Y.S.2d 19, 21 (1st Dep't 1990).

A.   Failure to Adequately Plead a Fiduciary Relationship Between Plaintiffs and Haddow

Central to Counts I and III is the existence and breach of a fiduciary relationship.  However, neither the FAC nor brief in opposition to defendants' motion to dismiss clearly articulate plaintiffs' theory under which a fiduciary relationship existed between plaintiffs and either Haddow or the Bar Works entities.[4]

---

[4] We cannot credit plaintiffs' conclusory allegations that, e.g., "various 'Bar Works' entities had fiduciary duties to investors." FAC ¶ 80; see Zeising v. Kelly, 152 F. Supp. 2d 335, 348 (S.D.N.Y. 2001); see also, e.g. FAC ¶ 81 ("Haddow and/or the various 'Bar Works' entities were in a position of superior knowledge and expertise to their investors, who reposed their trust and confidence in the Bar Works Entities."), id. ¶ 82 ("This created a relationship

"A fiduciary relationship arises when one has reposed trust or confidence in the integrity or fidelity on another who thereby gains a resulting superiority of influence over the first, or when one assumes control and responsibility over another." <u>Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC.</u>, 376 F. Supp. 2d 385, 413-14 (S.D.N.Y. 2005).  "A simple business transaction between a potential investor and a company soliciting such investors" does not give rise to such a special relationship. <u>Elliott v. Qwest Commc'ns Corp.</u>, 25 A.D.3d 897, 898 (3d Dep't 2006).

Here, there are no allegations that Haddow had a relationship of trust (or even knew) any of the plaintiffs.  Nor are there sufficient allegations that the structure of the transaction was anything more than a traditional investment.  <u>See</u> <u>Ne. Gen. Corp. v. Wellington Advert., Inc.</u>, 624 N.E.2d 129, 131 (N.Y. 1993). Plaintiffs simply agreed to invest in Bar Works in exchange for a promise of guaranteed monthly payments – no special relationship with Haddow inducing their investment, and no post-investment reliance on Haddow's discretion suggesting a reposition of trust. <u>See, e.g.</u>, State Court Complaint ¶ 47.

---

of high trust and confidence whereby the Bar Works Entities, and ultimately Bar Works Inc. was/were entrusted with Plaintiffs (sic) investment funds deposited into the 622 Account and the 379 Account."), <u>id.</u> ¶¶ 8, 144 (defendants had actual knowledge that "Bar Works was a Ponzi Scheme"), <u>id.</u> ¶¶ 45, 133 (defendants had actual knowledge that "Haddow was a thief and/or an embezzler").  These allegations are "legal conclusions masquerading as factual conclusions" and insufficient to survive a motion to dismiss.  <u>Smith</u>, 291 F.3d at 240 (internal citations and quotations omitted).

Nevertheless, plaintiffs at oral argument urged the Court to consider Meinhard v. Salmon for the proposition that a fiduciary relationship existed between plaintiffs and either Haddow or Bar Works. 164 N.E. 545 (1928).  Plaintiffs' reliance on Meinhard is misguided.  In that seminal case, Chief Judge Cardozo held that "[j]oint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty." Id. at 463-464.  While Meinhard serves as a cornerstone of joint venture jurisprudence, plaintiffs' manifest failure to plead the elements necessary to establish a joint venture renders plaintiffs' citation inapposite.[5]  See Zeising v. Kelly, 152 F. Supp. 2d 335, 347-348 (S.D.N.Y. 2001) (dismissing breach of fiduciary duty claim for failure to adequately plead the existence of a joint venture).

Because plaintiffs' fail to plausibly allege the existence of a fiduciary relationship between plaintiffs and Haddow or Bar Works, we dismiss Counts I and III of the FAC.

---

[5] "Perhaps, the most important criterion of a joint venture is the joint control or management of the joint property used in accomplishing its aims." Allen Chase & Co. v. White, Weld & Co., 311 F. Supp. 1253, 1260 (S.D.N.Y. 1970) (internal citation omitted).  At minimum, plaintiffs fail to plead that "each party had some degree of joint management control over the venture" or that "there was a provision for the sharing of both losses and profits." Kidz Cloz, Inc. v. Officially For Kids, Inc., 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004); see also Jade Apparel, Inc. v. Steven Schor, Inc., No. 11 Civ. 2955 (KNF), 2013 WL 498728, at *6 (S.D.N.Y. Feb. 11, 2013) (dismissing breach of fiduciary duty claim because of "undisputed evidence that sharing losses was not discussed in the ... agreement").  Bar Works controlled the work space leases "without the guidance or control of the Plaintiff investors," State Court Complaint ¶ 114, and a review of the PPM referenced in the FAC reveals no intention for investors to share in Bar Works' losses.  See Zhao v. Bar Works USA LLC, etc. et al., Index No. 155530/2017 case, NYSCEF Docket No. 6.

B.   <u>Failure to Adequately Plead Actual Knowledge of the Alleged Fiduciary Relationship</u>

Even assuming that there was a fiduciary relationship between investors and Haddow, these claims fail for the additional reasons that plaintiffs do not adequately plead that defendants had actual knowledge of that relationship. A necessary predicate of actual knowledge of a breach of fiduciary duty is knowledge of a fiduciary relationship itself. Plaintiffs allege that defendants knew that Haddow and/or Bar Works "were using the 622 Account and the 379 Account as fiduciary accounts," FAC ¶ 83, and that Bar Works had failed to "invest customer property pursuant to [the PPM], which defendants had seen," <u>id.</u> ¶ 130. Merely stating that JPMC knew Haddow was using the JPMC accounts as fiduciary accounts is plainly conclusory (and elides the fact that the JPMC accounts were ordinary depository accounts rather than specially designated fiduciary or trust accounts). Additionally, the mere fact that JPMC had access to the PPM is irrelevant without sufficiently particular factual allegations that the PPM contained specific indications that the relationship between Haddow and/or Bar Works and investors rose to the level of fiduciary. <u>See</u> <u>Berman v. Morgan Keegan & Co.</u>, No. 10 Civ. 5866 (PKC), 2011 WL 1002683, at *7 (S.D.N.Y. Mar. 14, 2011) ("Rule 9(b) applies ... to ... claims alleging aiding and abetting breach of fiduciary duty sounding in fraud.").

C.   Failure to Adequately Plead Actual Knowledge of Breach
     of Alleged Fiduciary Relationship

Plaintiffs also fail to adequately allege that defendants had actual knowledge of any *breach* of obligations running from Haddow or Bar Works to plaintiffs.   Plaintiffs' argument that JPMC's knowledge of frequent withdrawals, wire transfers to accounts in countries recognized as money laundering havens, and the single transfer recall request constitute "actual knowledge" of a breach of fiduciary duty or fraudulent scheme is unpersuasive.   Without adequately alleging the existence or JPMC's knowledge of a fiduciary relationship between Haddow and investors, these "red flag" allegations – which may well have "put [JPMC] on notice that some impropriety may have been taking place," Lerner, 459 F.3d at 294 – fall short of creating the "strong inference of actual knowledge" of a primary violation that is required to state a claim for aiding and abetting liability.   Id.; see also Nigerian Nat'l Petroleum Corp. v. Citibank, N.A., No. 98 Civ. 4960, 1999 WL 558141, at *1-2, 7-8 (S.D.N.Y. July 30, 1999) (noting that bank's knowing disregard of several indications of fraud, including transfer of funds from a company's account to a personal account, did not amount to bank's having actual knowledge of the fraudulent scheme).

A review of the cases cited by plaintiffs in their opposition brief demonstrates that the type of red flag allegations necessary

to support a strong inference of actual knowledge are absent in this case.  In Lerner, for example, an aiding and abetting breach of fiduciary duty claim survived because plaintiffs alleged that the defendant banks knew that: 1) an attorney was comingling client funds deposited in fiduciary bank accounts in breach of his fiduciary duties to those clients; 2) the attorney's fiduciary accounts were overdrawn; 3) numerous checks written on the attorney's fiduciary accounts were dishonored for insufficient funds; and 4) the attorney transferred funds from the fiduciary accounts to her personal accounts.  Id.  Given that plaintiffs had plausibly alleged that defendants in Lerner knew of the nature and purpose of the attorney fiduciary accounts, it was clear that defendants were not simply aware of "red flags," they had actual knowledge of a primary violation itself.[6]  Id. ("[Attorney's] commingling of funds was not only an indication of a breach of fiduciary duty — it was, in and of itself, a breach.").

Plaintiffs' citation to Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 389 (S.D.N.Y. 2007) and Oster v. Kirschner, 77 A.D.3d 51, 55 (1st Dep't 2010) are equally unpersuasive.  In

---

[6] In their reply brief (and at oral argument), plaintiffs repeatedly – and erroneously – claim Lerner held that the actual knowledge standard for an aiding and abetting breach of fiduciary duty is a lesser standard than is required for aiding and abetting fraud.  See ECF No. 44 at 21; Feb. 6, 2019 Hr'g Tr., ECF No. 50.  But Lerner simply holds that banks have actual knowledge of a breach of fiduciary duty when they are aware of behavior that was "in and of itself, a breach" of fiduciary duty – such as an overdrawn attorney fiduciary account.  Lerner, 459 F.3d 273, 294. Here, unlike in Lerner, plaintiffs have failed to allege defendants had actual knowledge of behavior that was "in and of itself, a breach" of fiduciary duty.  Id.

Mazzaro, allegations that the defendant bank knew the identities
of the recipients of transferred funds, and further knew those
recipients were "black market currency traders," were sufficient
to plead actual knowledge.  525 F. Supp. 2d at 389; see also Rosner
v. Bank of China, 349 F. App'x 637, 639 (2d Cir. 2009)
(distinguishing Mazzaro on the grounds that the Mazzaro plaintiffs
pled actual knowledge, rather than constructive knowledge, that
transfers were to black market currency traders).  Moreover, the
Mazzaro plaintiffs also pled that an employee of the Mazzaro
defendant told the fraudulent actor that he could "more effectively
could conceal the fraud by opening a separate bank account."  Id.
at 390.  In Oster, an SEC proceeding revealed that defendant law
firm had actual knowledge of their clients' criminal backgrounds
and the law firm had drafted the private placement memorandum used
to perpetrate the Ponzi scheme. 77 A.d.3d at 55.

These cases present factual scenarios different in kind from
the allegations contained in the FAC. Here the factual allegations
are limited to ones about activity in ordinary depository accounts
and what JPMC *should* have known, as opposed to what they actually

15

knew[7], <u>see, e.g.</u>, FAC ¶ 18 (defendants had "actual notice" Haddow was laundering Plaintiffs' money).[8]

In a last-ditch effort to salvage their allegations of actual knowledge, plaintiffs rely on a theory of conscious avoidance to attach liability to JPMC.   <u>See</u> FAC ¶ 50 ("JPMC ignored, or was willfully blind to the suspicious and inexplicable activity in the 622 Account and the 379 Account."); <u>see also</u> ECF No. 44 at 25 (pointing to Haddow's alleged status as a "notorious fraudster" in the U.K. to support a conscious avoidance argument).   To survive a motion to dismiss under a theory of conscious avoidance, plaintiffs must allege facts such that "it can almost be said that the defendant actually knew [of the underlying tort] because he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." <u>In re Stillwater Asset Backed Offshore Fund Ltd.</u>, No. 16 Civ. 8883 (ER), 2018 WL 1610416, at *11 (S.D.N.Y. Mar. 30, 2018); <u>see also</u> <u>Zamora</u>, 2015 WL 4653234, at *3.   Absent from the FAC are particular

---

[7] Plaintiffs' remaining conclusory pleading that JPMC knew "Haddow and Bar Works Inc. were breaching their fiduciary obligations to the Plaintiffs and other investors in the Bar Works Entities," (FAC ¶¶ 55, 84, 119, 120), is a legal conclusion masquerading as a factual conclusion and insufficient to survive a motion to dismiss.   <u>Smith</u>, 291 F.3d at 240 (internal citations and quotations omitted).

[8] Plaintiffs also argue that either: 1) JPMC's anti-money laundering procedures detected Haddow's scheme and established JPMC's actual knowledge of the scheme, or alternatively, 2) JMPC must have failed to effectively execute its own anti-money laundering procedures.   FAC ¶¶ 61, 69, 70.   As a matter of law, alleged failure to comply with "vague and unspecified" AML controls is insufficient to infer actual knowledge.   <u>Zamora v. JPMorgan Chase Bank, N.A.</u>, No. 14 Civ. 5344, 2015 WL 4653234, at *3 (S.D.N.Y. July 31, 2015).

and non-conclusory allegations that defendants determined to evade
learning of facts confirming underlying fraudulent activity.  See
In re Stillwater Asset Backed Offshore Fund Ltd., No. 16 Civ. 8883
(ER), 2018 WL 1610416, at *11 (S.D.N.Y. Mar. 30, 2018) (dismissing
aiding and abetting claims when pleadings "[fail] to establish
facts showing that [defendants] specifically avoided learning of
the conversion or breach of fiduciary duty that they suspected had
occurred, and merely state in a conclusory fashion that the lenders
failed to perform adequate due diligence and 'turned a blind eye'
to information that 'should have at least prompted further inquiry'
into potential misconduct.").

D.    Failure to Plead Substantial Assistance

Plaintiffs' failure to adequately plead the existence of a
duty or actual knowledge of a breach of that duty necessitates
dismissal of Counts I and III.  Morever, plaintiffs have failed to
adequately plead substantial assistance.  This failure provides an
additional and independent ground for dismissal.  See SPV OSUS
Ltd. 2016 WL 3039192, at *6 (aiding and abetting breach of
fiduciary duty claims require a showing of "substantial
assistance").  "[T]he mere fact that participants in a fraudulent
scheme use accounts at a bank to perpetrate it, without more, does
not in and of itself rise to the level of substantial assistance."
Mazzaro, 525 F. Supp. 2d at 390 (internal citations and quotations
omitted).  Substantial assistance may only be found where the

17

alleged aider and abettor "affirmatively assists, helps conceal or
fails to act when required to do so, thereby enabling the breach
to occur."   <u>In re Sharp Int'l Corp.</u>, 403 F.3d 43, 50 (2d Cir.
2005).

Plaintiffs' primary argument is that several examples of
JPMC's inaction constitute substantial assistance, including a
failure to report allegedly suspicious or illegal activity.   <u>See</u>
FAC ¶¶ 76, 77.   But "the mere inaction of an alleged aider and
abettor constitutes substantial assistance only if the defendant
owes a fiduciary duty **directly** to the plaintiff."   <u>Kaufman v.
Cohen</u>, 307 A.D.2d 113, 126, 760 N.Y.S.2d 157, 170 (1st Dep't 2003)
(emphasis added).   The only rationale offered by plaintiffs for
finding a duty running from JPMC to Bar Works investors is that
JPMC "knew that the activity in the 622 Account was not consistent
with the purported business purpose of the account."   FAC ¶ 76.
In the absence of a fiduciary or trust account, however, mere
knowledge that a business may not be using the funds in their
depository account in a manner consistent with their promotional
material does not trigger a duty to act. <u>In re Agape Litig.</u>, 681
F. Supp. 2d 352, 360 (E.D.N.Y. 2010) ("Neither the Plaintiffs nor
the Court have been able to locate a case which even suggests that
New York law imposes upon banks a duty to protect non-customers
from a fraud involving depository accounts."); <u>see also</u> <u>Renner v.
Chase Manhattan Bank</u>, No. 98 Civ. 926 (CSH), 1999 WL 47239, at *14

(S.D.N.Y. Feb. 3, 1999) (refusing to "depart from the general rule that a bank cannot be held accountable for the ways in which its customers manage their accounts" in the absence of a fiduciary account).[9]

Plaintiffs' sole allegation of an affirmative action that could constitute substantial assistance is the recall request that plaintiffs allege was declined by JPMC in contravention of an unspecified internal policy in early 2017.  FAC ¶ 78.  "Financial transactions that are not considered 'atypical' or 'non-routine' do not constitute substantial assistance."  Rosner v. Bank of

---

[9] For the first time at oral argument, plaintiffs' counsel cites to a footnote in Lerner for the proposition that a defendant bank has a duty to a non-customer in the absence of a fiduciary account.  See Feb. 6, 2019 Hr'g Tr., ECF No. 50.  But the complaint in Lerner included specific allegations that the defendant bank knew that the accounts at issue were intended to be trust accounts for client funds:

> because of (a) written 'escrow' agreements provided to the Banks, (b) references to 'escrow' agreements in wire transfer requests and/or confirmations, and (c) numerous occasions on which there were insufficient funds in order to honor checks drawn by Schick on such accounts and Schick expressly remarked to bank officers, in words or substance, that outstanding checks drawn on such accounts 'had' to be covered because the funds involved were the property of others.

Lerner, 459 F.3d at 281 n.2.  Here, there are no allegations in the FAC of overdrawn accounts, escrow agreements, or concessions from Haddow that the funds in the accounts – which had been transferred to Bar Works as an investment rather than to hold in trust - were the property of others.  Most importantly, as discussed supra, the behavior observed by the defendant bank in Lerner was "in and of itself, a breach" of fiduciary duty.  Id., 459 F.3d at 294.  Thus, to the extent Lerner establishes a duty from banks to non-customers in the absence of a fiduciary account, that duty is only triggered once a bank has specific actual knowledge of a breach of fiduciary duty.  As discussed supra, plaintiffs have failed to plead such actual knowledge here.  Plaintiffs' citation to Liu Yao-Yi v. Wilmington Tr. Co. for the proposition that Defendants owed a duty to plaintiffs is similarly unpersuasive.  301 F. Supp. 3d 403 (W.D.N.Y. 2017).  Liu Yao-Yi, like Lerner (and unlike the instant action), involved "escrow/custodial/trust accounts."  Id. at 410.

China, 528 F. Supp. 2d 419, 427 (S.D.N.Y. 2007).   Moreover, "violation of an organization's internal policy with respect to financial transactions does not in and of itself constitute substantial assistance." Mazzaro, 525 F. Supp. 2d at 391 (internal citations omitted).   The mere fact that JPMC declined the request and released the funds to Haddow, absent allegations that JPMC was notified of the reason for the recall request, violated any standard banking procedures, or provided services above and beyond ordinary banking services, is insufficient to state an aiding and abetting claim.[10]   See Nigerian Nat. Petroleum Corp., No. 98 CIV. 4960 (MBM), 1999 WL 558141, at *8 (S.D.N.Y. July 30, 1999).

## IV.   Other Aiding & Abetting Claims

While the Court has addressed plaintiffs' allegations in the context of their breach of trust and aiding and abetting fiduciary duty claims, "the elements of aiding and abetting a breach of fiduciary duty, aiding and abetting a conversion, and aiding and abetting a fraud are substantially similar." Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009)); see also SPV OSUS Ltd.

---

[10] Plaintiffs' cite to Mansor – an out of district case wholly dissimilar to the present case – for the proposition that the removal of restraints on transfers constitutes substantial assistance.  183 F. Supp. 3d 250 (D. Mass. 2016).   In Mansor, the court found substantial assistance at the motion to dismiss stage when: a specific employee acquired knowledge of the illegal account activities and "engaged in various efforts" to assist in the fraudulent activity, including removal of multiple restraints on fraudsters' transactions. Id. at 268.  Here, plaintiffs do not plead that the individual who released the individual plaintiff's funds was aware of Haddow's fraudulent activity, or that funds were released to Haddow more than once.

v. AIA LLC, No. 15-CV-619 (JSR), 2016 WL 3039192, at *6 (S.D.N.Y. May 26, 2016), aff'd sub nom. SPV OSUS Ltd. v. UBS AG, 882 F.3d 333 (2d Cir. 2018).   A claim for commercial bad faith also requires, inter alia, actual knowledge of wrongdoing and complicity of bank principals in that wrongdoing.   Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 24 (S.D.N.Y. 2009), aff'd sub nom. Musalli Factory for Gold & Jewellry Co. v. JPMorgan Chase Bank, N.A., 382 F. App'x 107 (2d Cir. 2010); Lerner, 459 F.3d at 293.

Here, the primary violations underlying plaintiffs' aiding and betting conversion (Count IV), aiding and abetting fraud (Count V), and commercial bad faith (Count VII) all involve the same underlying conduct as their breach of trust (Count 1) and aiding and abetting breach of fiduciary duty (Count III).   See FAC ¶ 120 (Breach of Fiduciary Duty) ("The Defendants knew Haddow, Bar Works Inc. and/or the Bar Works Entities breached that fiduciary duty by engaging in embezzlement"); ¶ 135 (Conversion) ("Haddow, Bar Works Inc. and/or the Bar Works Entities converted millions of dollars of Plaintiffs' money."); ¶ 142 (Fraud) ("Haddow, Bar Works Inc., and/or the Bar Works Entities were engaged in a fraud ... and converted millions of dollars of Plaintiffs' money."); ¶ 157 (Commercial Bad Faith) ("Defendants had actual knowledge of the facts and circumstances of the illegitimate scheme by Haddow, Bar Works Inc. and/or the Bar Works Entities.").   Accordingly, for the

reasons stated above, we find plaintiffs have failed to state claims for these causes of action as well.

**V.   Remaining Claims**

A.   Aiding and Abetting Embezzlement

Count II (aiding and abetting embezzlement) is dismissed because it alleges "violation of a criminal statute for which there is no express or implied private right of action." Zamora v. JPMorgan Chase Bank, N.A., No. 14 Civ. 5344, 2015 WL 4653234, at *2 (S.D.N.Y. July 31, 2015) (dismissing aiding and abetting embezzlement claim for failure to state cognizable claim); see also Cohain v. Klimley, Nos. 08 Civ. 5047, 09 Civ. 4527, 2011 WL 3896095, at *4 (S.D.N.Y. Aug. 31, 2011) (no private right of action for larceny/embezzlement).

B.   Unjust Enrichment

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that 'equity and good conscience' require restitution." Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal citation omitted).  To survive a motion to dismiss, an unjust enrichment claim "requires some type of direct dealing or actual, substantive relationship with a defendant." Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC, 317 F. Supp. 2d 301, 334 (S.D.N.Y. 2003).

Plaintiffs' unjust enrichment claim is dismissed because they have failed to adequately plead that a relationship existed between themselves and defendants.[11]  The claim also fails because plaintiffs failed to allege that defendants were unjustly enriched at the expense of plaintiffs, as "[p]laintiffs' financial position would be exactly the same today whether [defendant] was paid the fees or not." Nagelberg v. Meli, 299 F. Supp. 3d 409, 418 (S.D.N.Y. 2017); see also Grossman, 202 F.3d at 616.

C.   Gross Negligence

To state a claim for gross negligence, "a plaintiff must allege (1) that the defendant owed him or her a cognizable duty of care; (2) that the defendant breached that duty; and (3) that the plaintiff suffered damage as a proximate result of that breach." Di Benedetto v. Pan Am World Serv., 359 F.3d 627, 630 (2d Cir. 2004).  Further, there must be allegations of "conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing." Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 432 (S.D.N.Y. 2010) (internal citations and quotations omitted).  Because plaintiffs fail to plausibly allege that JPMC owed a duty of care to plaintiffs or that their conduct

---

[11] Plaintiffs' citation to Chen v. New Trend Apparel, Inc. is unpersuasive. See ECF No. 44 at 35.  Plaintiffs cite to Chen for the proposition that "defendant's awareness of the plaintiff and of the potential negative impact of its own conduct on the plaintiff may serve as further indication of the required closeness between the parties." 8 F. Supp. 3d 406, 465 (S.D.N.Y. 2014).  But for the same reasons plaintiffs' aiding and abetting claims fail, plaintiffs also fail to sufficiently plead defendants' awareness of "potential negative impact of its own conduct on the plaintiff."

amounts to a reckless disregard for plaintiffs' rights, they fail to state a claim of gross negligence and Count VII is dismissed. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 830 (S.D.N.Y.) ("Banks do not owe non-customers a duty to protect them from the intentional torts of their customers."); see also Smith, 291 F.3d at 240.

## CONCLUSION

For all of the foregoing reasons, defendants' motion to dismiss is granted in its entirety and with prejudice[12] and defendants' motion to strike is denied as moot. The Clerk of Court is respectfully directed to enter judgment for defendants and terminate this case and any motions pending therein.

**SO ORDERED.**

Dated:   New York, New York
         March _13_, 2019

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[12] At oral argument, plaintiffs urged the Court to dismiss the FAC without prejudice, arguing that Haddow is currently in federal custody and that he "is the person who would have more detailed information as to who the particular people were at Chase at particular times and conversations." Feb. 6, 2019 Hr'g Tr., ECF No. 50 at 22:24, 24:4-6. The Court is skeptical that Haddow has any motivation to cooperate with plaintiffs and, in any event, plaintiffs have already obtained a default judgement against Haddow in state court, which is sufficient to pursue Haddow's liability to plaintiffs. Zhao v. Bar Works USA LLC, etc. et al., Index No. 155530/2017, NYSCEF Docket No. 162. Plaintiff's request is denied.